## DECEMBER 30, 1980

No. A–567.  KLUTZNICK, SECRETARY OF COMMERCE, ET AL. *v.* CAREY, GOVERNOR OF NEW YORK, ET AL.  The application of the Solicitor General for a stay pending appeal to the United States Court of Appeals for the Second Circuit was presented to JUSTICE MARSHALL as Circuit Justice, and by him referred to the Court.  The application was directed to that portion of the judgment entered December 29, 1980, by the United States District Court for the Southern District of New York, case No. 80 Civ. 4550, that precludes the Bureau of the Census from certifying to the President the population totals for New York and the state-by-state census tabulations, on December 31, 1980, as mandated by 13 U. S. C. § 141 (b).  The application is hereby granted.  This order shall remain in effect pending disposition of the appeal by

the Court of Appeals. JUSTICE STEVENS took no part in the consideration or decision of this application.

JUSTICE MARSHALL, dissenting.

In this case, applicant Secretary of Commerce and others seek a stay pending appeal, of an order of the United States District Court for the Southern District of New York, enjoining the Census Bureau from certifying the official tabulation of New York State's population to the President as required by 13 U. S. C. § 141 (b). Respondents include the City of New York and its Mayor; the Governor of the State; and several voters and taxpayers in various city, congressional, and state senatorial and assembly districts who filed suit in District Court alleging that the 1980 census was conducted in a manner that will inevitably result in an undercount, largely in low-income areas populated by members of minority groups. Specifically, respondents alleged that the master address registers used by the Census Bureau were grossly inadequate and that the followup check of the master address registers by Postal Service and census workers was grossly inadequate. Respondents' ultimate contentions were that the resulting undercount not only will cause New York to lose at least one congressional seat to which it is entitled when reapportionment is made pursuant to the 1980 census, but that it will also result in the dilution of the votes of New York residents vis-à-vis those of residents of other States, and will cost New York City and the State vast sums of money distributed under federal revenue sharing and other programs with statutory formulas tied to the census.

The District Court initially entered a preliminary injunction against the Census Bureau: It found that respondents had established a clear possibility of irreparable harm to the efficacy of their votes, and that respondents were likely to succeed because they had submitted significant evidence concerning Census Bureau mismanagement and had raised serious questions as to whether some of the Bureau's policies and

procedures were carried out in an arbitrary and irrational manner. The District Court declined to stay the preliminary injunction, and on appeal, the Court of Appeals for the Second Circuit affirmed the District Court's denial of a stay. The Court of Appeals found that respondents had demonstrated a possibility of irreparable harm and had also shown sufficient prospect of success on the merits to justify a preliminary injunction, and that the District Court did not disregard traditional equitable principles in issuing the preliminary injunction.

On December 22, 1980, the District Court entered final judgment in favor of respondents. The court found that the Bureau's implementation of the census was improper in several respects and that the Bureau's mismanagement of the census had resulted in a significant undercount in New York. The District Court ordered the Bureau to adjust the actual census data regarding New York in a reasonable and scientific manner to compensate for the disproportionate undercount, and it enjoined the Bureau from certifying New York's population totals to the President on December 31, 1980, as required by statute. Applicants then brought this stay application.

Most of applicants' memorandum in support of their stay application is devoted to arguing that the respondents are unlikely to succeed on the merits of the case.* On the sparse record before this Court, I am not prepared to conclude that respondents cannot prevail on the merits. The Court of

---

*Applicants also rely on JUSTICE STEWART's stay of the District Court's decision in *Young* v. *Klutznick,* 497 F. Supp. 1318 (ED Mich. 1980). In that case, the District Court enjoined the Census Bureau from certifying population totals for *any* States by December 31, 1980. But in this case, unlike in *Young,* the District Court order *only* applies to *New York's* population totals. Thus, applicants cannot rely on the alleged interest of various States in using the census figures for redistricting purposes for state legislatures.

Appeals rejected applicants' claim that respondents cannot prevail on the merits and, as noted, the District Court has ruled against applicants as has at least one other District Court. For me, the crucial issue in ruling on this application is applicants' inability to show that there is a substantial likelihood that they will suffer irreparable harm if a stay is not issued. The only thing applicants point to is that the Census Bureau will be unable to comply with the December 31 deadline if the District Court's order is not stayed. But as the Court of Appeals pointed out, there is nothing sacrosanct about the December 31 deadline. If the District Court's conclusion is correct, the inability to meet the deadline is the Bureau's own fault. Moreover, the actual reapportionment of seats based on the 1980 census will not commence until some later date and there is nothing about the District Court's order that prevents this reapportionment from taking place well in advance of the 1982 congressional elections.

Applicants' failure to prove irreparable harm from denial of their stay application stands in marked contrast to the irreparable harm that will be inflicted on respondents if the Census Bureau is allowed to certify inaccurate (at least according to the District Court) results to the President. Applicants have not suggested that there is any procedure for correcting these "inaccurate" figures once they are reported to the President and he transmits them to Congress as required by statute, and these figures will presumably be the basis for the reapportionment of congressional seats and a variety of federal revenue grants. The members of minority groups and other residents of low-income areas who were not counted by the Census Bureau will therefore suffer the irreparable injury stemming from the undercount. Thus, it appears that granting the application not only fails to preserve the status quo, it may actually moot the underlying controversy. In these circumstances, I cannot agree that a stay must issue.